UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

————————————————————
JAMES ALMAGNO, individually and )
on behalf of all similarly situated )
current and former employees of the )
CENTRAL COVENTRY FIRE )
DISTRICT, )
    Plaintiffs, )
  )           C.A. No. 20-440-JJM-LDA
  )
    v. )
  )
CENTRAL COVENTRY FIRE )
DISTRICT, )
    Defendant. )
————————————————————

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

    The United States Department of Labor ("DOL") reviewed Defendant Central

Coventry Fire District's ("the District") payroll records in 2018 and concluded that

the District violated the Fair Labor Standards Act ("FLSA") when it did not properly

compensate its firefighters as required by the Collective Bargaining Agreement

("CBA"). Mr. Almagno, a Coventry firefighter, sued the District.[1] Relying on the

DOL's investigation, Plaintiffs now move for summary judgment, arguing that there

are no disputed issues of material fact as to the District's liability or damages such

———————————

[1] Mr. Almagno sued individually and on behalf of all similarly situated current
and former employees of the District, but there has been no class certification in the
case. The Court will refer to Plaintiffs in the collective.

that they are entitled to judgment. After a thorough review of the briefing and record, the Court GRANTS Plaintiffs' Motion for Summary Judgment. ECF No. 24.

## I. BACKGROUND

Plaintiffs are employees or former employees of the District, represented by Coventry Firefighters Union, Local 3372, IAFF ("the Union"). The Union and the District are parties to the CBA that governs the terms of the employment relationship for the relevant period of September 1, 2015, through August 31, 2020.

The District runs on a three-platoon schedule, where Plaintiffs work three twenty-four-hour shifts with a day off between each of the first two shifts and four days off after the last twenty-four-hour shift. The District schedules the Plaintiffs to work 2,912 hours per year. Plaintiffs' weekly compensation is derived by taking their annual salary and dividing it by fifty-two (52). Their weekly salary is based on hours worked, either forty-eight hours or seventy-two hours. The CBA requires that the District pay the Plaintiffs overtime at a rate of time and one-half of their hourly rates after fifty-three (53) hours per week. The CBA also caps overtime paid. Under Article III, Section 3 of the CBA, "when the District reaches One Hundred Twenty Thousand Dollars ($120,000.00) in overtime expenses (i.e., time-and-one-half pay) in any fiscal year...the District shall pay firefighters...their straight time hourly rate... for each hour actually worked in excess of 212 hours."

Plaintiffs also worked voluntary shifts performing collateral and fire marshal duties outside their normal schedules. Collateral duties include teaching and instructing bargaining unit members and performing facility upgrades. When

2

performing these added duties, Plaintiffs routinely exceeded fifty-three (53) hours worked in a week. The District recorded payments for these duties as a separate line item on the Plaintiffs' paychecks and it did not include these hours worked for overtime purposes.

In 2018, the DOL began to investigate the District's payment practices between April 2, 2015 and March 25, 2018 for FLSA violations. Before getting started, the DOL and the District, through its Manager, Gayle Corrigan, entered into a statute of limitations tolling agreement ("Tolling Agreement"). Under the Tolling Agreement, the DOL agreed to withhold immediate filing of legal proceedings under the FLSA to allow time for the DOL and the District to discuss and try to resolve the matter. In exchange, the District agreed that it would toll the statute of limitations beginning on February 24, 2018.

According to the records the DOL reviewed, from April 2, 2016, to the present, Plaintiffs regularly performed firefighter, collateral, and Fire Marshall duties more than 212 hours in a twenty-eight-day period and the District did not pay time-and-one-half for all hours worked in excess. The District also paid the Plaintiffs straight time for all overtime hours worked after the District reached the $120,000 overtime cap during three different time periods amounting to about fifteen months. This conduct violated several FLSA provisions for 1) "failing to combine all hours worked (firefighter, collateral duty, Fire Marshall hours) in the week for overtime purposes and failing to include out-of-rank payment in the regular rate," and 2) "paying the firefighters straight time for all overtime hours worked after the District reached the

3

overtime cap specific in the CBA each fiscal year." The DOL investigation concluded that for the period April 2, 2016, through March 24, 2018, the District owed Plaintiffs back wages totaling $139,484.47 and that, as of May 6, 2019, the District continued to compensate employees in violation of the FLSA.

The District disputed these conclusions, saying that they fundamentally disagreed with the DOL's analysis, because the DOL did not include overpayments made to Plaintiffs during the weeks that they received compensation for working fifty-six hours and only worked forty-eight hours. The District claimed that because Plaintiffs worked three weeks at forty-eight hours for every one week they worked seventy-two hours, there was a resulting overpayment to these Plaintiffs. The DOL investigator explained to the District that straight time payments were not creditable toward overtime premiums due, and that each workweek stands alone for payment purposes. The District continues to dispute that these straight time payments are not creditable toward overtime premiums due.

Plaintiffs sued and now seek judgment in their favor. ECF No. 24.

## II.   STANDARD OF REVIEW

Fed. R. Civ. P. 56 controls in deciding whether a party is entitled to summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. More particularly,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence

> of an element essential to that party's case, and on which that party will
> bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When deciding whether the Court should grant summary judgment, the Court should "view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995).

As alluded to, there must first be no genuine issues of material fact. "[M]ere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Thus, the issue must be genuine and material. *See id.* "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party. . .. '[M]aterial' means that the fact is one that might affect the outcome of the suit under the governing law." *Morris v. Gov't Dev. Bank of P. R.*, 27 F.3d 746, 748 (1st Cir. 1994) (citations omitted) (internal quotation marks omitted).

Additionally, the moving party must have a right to judgment as a matter of law. "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). The Court decides this latter element of the summary judgment standard by evaluating "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of

proof is imposed." *Anderson*, 477 U.S. at 252 (emphasis in original) (internal quotation marks omitted).

## III.   DISCUSSION

Before the Court gets to the heart of Plaintiffs' motion for summary judgment, the Court must consider the effect of the Tolling Agreement. The Court ruled earlier in this case in response to the District's motion to dismiss that the Tolling Agreement was valid and binding. Now, the District also challenges the Tolling Agreement raising issues of authenticity and Ms. Corrigan's actual authority to bind the District to the Tolling Agreement. The outcome the District seeks in this vein is to shrink drastically the period it would be on the hook for FLSA violations.

### A. Damages Period, Statute of Limitations, and Tolling Agreement

#### 1. Authenticity

The District's challenge to the authenticity of the Tolling Agreement centers on the fact that the agreement submitted to the Court excludes the first two pages and is not dated. To satisfy the requirement of authenticating or identifying evidence, the proponent must produce "evidence sufficient to support a finding that the item is what its proponent claims." *United States v. Holmquist*, 36 F.3d 154, 167 (1st Cir. 1994) (citing Fed. R. Evid. 901). Thus, a document's "'[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances,' can, in cumulation, even without direct testimony, provide sufficient indicia of reliability to allow a finding that it is authentic." *Id.* "[T]he burden of authentication does not require the proponent of the evidence to rule out

6

all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood." *Id.* at 168.

Although the District questions why the first two pages are not included, it is obvious from the document itself that the substance of the agreement begins on the third page. And while the signers did not date the agreement, the agreement explicitly says that the District tolls the statute of limitations beginning on February 24, 2018. The plain language of the agreement and signatures of both parties, District Manager Gayle Corrigan and DOL Representative Donald Epifano, satisfy the burden that the Tolling Agreement is authentic.

### 2. *Authority of District Manager Gayle Corrigan*

The District next argues that it is not bound to the terms of the Tolling Agreement because Ms. Corrigan did not have the authority to bind it, suggesting that she needed approval from the District Board of Directors. "An essential element of agency is the principal's right to control the agent's actions." Restatement (Third) of Agency § 1.01 cmt. f (2006). "The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Id.*

While there are two types of authority, actual and apparent, Rhode Island law mandates that a municipality is not bound by the act of an agent unless the agent had the actual authority to make the agreement. *See Caron v. Town of N. Smithfield*, 885 A.2d 1163, 1164 (R.I. 2005) (consent order vacated because town solicitor lacked

7

actual authority to enter into agreement and bind municipality). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) Of Agency § 2.01.

Actual authority can be express or implied. Restatement (Third) of Agency § 2.01 cmt. b. Express authority "means actual authority that a principal has stated in very specific or detailed language." *Id.* Implied authority means "actual authority either (1) to do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities or (2) to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." *Id.*

The District relies on the Charter's language to support its argument that Ms. Corrigan did not have actual authority to bind the District. When construing a town charter's provisions, the rules of statutory construction apply; the Court should construe provisions to give "reasonable meaning and effect to all parts of the section in question." *Carter v. City of Pawtucket*, 341 A.2d 53, 56 (1975).

The Court finds that the Charter's language does not limit Ms. Corrigan's authority. Section 6 of the Charter describes the general delegation of authority within the District and provides that "[t]he Board of Directors shall have the power to appoint and/or employ, a tax assessor, tax collector, treasurer, clerk, and other

8

committees and/or positions necessary for the efficient operation of the District." ECF No. 26-3 at 12-13. The Charter's language makes clear that the Board of Directors has the power to appoint and hire a District Manager for the Central Coventry Fire District to make decisions for its "efficient operation" and that such "efficient operation" could include entering into a Tolling Agreement to preserve the District's ability to negotiate with the DOL. This conclusion is also supported by the District's admission in response to Plaintiffs' Interrogatory that, in her position as District Manager, Ms. Corrigan did not need Board of Director authorization to handle matters relating to the DOL investigation. ECF No. 25-10 at 17-18. The fact that she signed the Tolling Agreement as District Manager appointed under the town Charter at the outset of the investigation adds to the conclusion that Ms. Corrigan had actual authority to enter into the Tolling Agreement with the DOL that bound the District.

Because the Court again finds, after considering the District's new arguments trying to undermine it, that the Tolling Agreement is valid and binding, the District's statute of limitations defense fails. The proper look back period for the District's FLSA violations is from April 2, 2016, through March 24, 2018. The Court will now move to consider the FLSA violations and damages arising therefrom.

### B. FLSA Violations

The DOL concluded that the overtime cap in the CBA, subsequent straight time payments to firefighters for overtime hours worked, failure of the District to combine all hours worked (firefighter/EMT, fire marshal, and collateral duty) in the

week for overtime purposes, and failure to include out-of-rank payment in the regular rate directly violates this provision. The DOL's factual and legal conclusions are undisputed in the record before the Court. Thus, the Court finds that the District violated 29 U.S.C. § 207. Now the Court moves to Plaintiffs' damages for these overtime violations.

## C.   FLSA Damages

Section 216(b) of the FLSA provides that "[a]ny employer who violates provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional amount as liquidated damages." 29 U.S.C. § 216(b). The Court now looks at Plaintiffs' entitlement to unpaid overtime wages and liquidated damages, if proper.

### 1. Back Wages

The DOL determined that the District owed Plaintiffs $139,484.47 in back wages. The weight the Court should give to "such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The DOL's report makes clear that it thoroughly and comprehensively reviewed and audited the District's payment

10

procedures. The Court gives controlling weight to the DOL's conclusions and accepts them.[2]

### 2. *Liquidated Damages*

Next the Court considers whether Plaintiffs are entitled to liquidated damages. "The only way [the District] can escape liquidated damages is to 'show[ ] to the satisfaction of the court' that it acted in good faith and had reasonable grounds for believing that its acts did not violate the FLSA." *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 35 (1st Cir. 2007) (quoting 29 U.S.C. § 260). This determination of good faith and reasonable belief is left to the district court's discretion. *Id.* (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)).

The District argues that it acted in good faith because it inherited the payroll system from the State Receiver[3] and assumed that the State Receiver properly accounted for the terms of the CBA and the FLSA provisions therein, including the overtime cap. In moving for summary judgment, Plaintiffs highlight the fact that the District knew of these violations and blatantly refused to comply with the FLSA.

The Court finds that the District has failed to demonstrate good faith or the objective reasonableness of its actions. The District had a duty to ensure that its

---

[2] The District has not disputed the DOL's calculations except to claim that the DOL did not credit the District for alleged overpayments to Plaintiffs, arguing that in weeks when the Plaintiffs worked less than 56 hours, the District still compensated them for a full 56 hours. The District is not entitled to credits and offsets for overpayments to the Plaintiffs because the weekly wage rates are set by the CBA, rather than a traditional hourly wage.

[3] The District was in State Receivership under the RI Fiscal Stability Act, R.I. Gen. Laws § 45-9-1, et seq.

procedures and payroll systems complied with federal law. After the receivership, the District did not conduct an independent review of their payroll's system for FLSA compliance and, as such, it cannot now argue that its assumptions were tantamount to good faith acts to exonerate itself from liability for liquidated damages. *See Chao,* 493 F.3d at 35. Ignorance or failure to inquire into the law does not qualify under the evidentiary standard of good faith or reasonableness. *See Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 907-908.

Considering the statutory double damage requirement for all but "reasonable," "good faith" mistakes, the Court finds that Plaintiffs are entitled to liquidated damages of $279,969.68. *See* 29 U.S.C. §§ 216(b), 260.

## IV.   CONCLUSION

The Court GRANTS Plaintiffs' Motion for Summary Judgment. ECF No. 24. The parties will confer and submit a form of judgment.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

August 19, 2022